HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KORRI MARIE TREVES, et al.,

    Plaintiffs,

v.

UNION SECURITY INSURANCE
COMPANY, LLC, et al.,

    Defendants.

CASE NO. C12-1337RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff Korri Treves's motion for partial summary judgment and Defendants' motion for summary judgment. No party requested oral argument, and oral argument is unnecessary. For the reasons stated below, the court GRANTS Ms. Treves's motion (Dkt. # 17), holding as a matter of law that the court must conduct de novo review of Defendants' decision to deny her claim for long-term disability benefits. The court DENIES Defendants' motion (Dkt. # 14), because disputes of material fact and credibility prevent the court from deciding whether Defendants properly denied her claim. This order concludes with instructions to the parties to submit a joint statement detailing their preferred method of bringing this action to resolution. The joint statement is due no later than February 14, 2014.

ORDER – 1

## II. BACKGROUND

Ms. Treves worked as the Director of Group Services for Benefit Administration Company. She participated in a group long-term disability insurance plan (the "Plan") that her employer provided. Defendant Union Security Insurance Company ("Union") provided the Plan; no one disputes that it is an employee welfare benefit plan within the scope of the Employee Retirement Income Security Act ("ERISA").

Ms. Treves sued the Plan, Union, her employer, and the Plan's claims administrator after they issued a final denial of her claim for long-term disability benefits in January 2012. She first raised that claim in mid-2010, in the wake of a March 2010 sinus surgery. Prior to the surgery, she suffered from migraine headaches. After the surgery, she contends that the headaches became both more frequent and more painful. She contends that the headaches have left her unable to work, and that they qualify as a long-term disability within the meaning of the Plan. Union disagrees.[1] The court will consider the factual underpinnings of that disagreement in its later analysis.

Before addressing the parties' dispute over whether Ms. Treves is disabled within the meaning of the Plan, the court must decide what standard of review applies to the Plan's decision to deny her claim.

## III. ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

---

[1] For the sake of simplicity, the court refers to Union as the sole Defendant for the remainder of this order.

ORDER – 2

opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

## A. The Court Must Conduct De Novo Review of Union's Denial of Benefits.

ERISA permits a participant or beneficiary to sue to recover plan benefits. 29 U.S.C. § 1132(a)(1)(B). By default, the court conducts de novo review of a denial of benefits. *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008). If, however, a plan unambiguously gives its "administrator discretion to determine eligibility or construe the plan's terms, a deferential abuse of discretion standard is applicable." *Id.* at 1023-24. In this case, there is no dispute that the Plan contains a clause giving its administrator "sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy." AR 229.[2]

The dispute is whether a Washington insurance regulation makes the Plan's discretionary clause inapplicable. That regulation, at Washington Administrative Code ("WAC") § 284-96-012(1) (the "Discretionary Clause Ban"), provides in relevant part as follows:

> No disability insurance policy may contain a discretionary clause. "Discretionary clause" means a provision that purports to reserve discretion to an insurer, its agents, officers, employees, or designees in interpreting the terms of a policy or deciding eligibility for benefits, or requires deference to such interpretations or decisions . . . .

No one disputes that the discretionary clause in the Plan is a discretionary clause within the meaning of the Discretionary Clause Ban. The parties instead dispute whether the Discretionary Clause Ban applies to the Plan. Union argues that the Discretionary Clause Ban, which took effect in September 2009, does not apply to the Plan, which went into effect in 2002.

---

[2] The court uses the notation "AR" to cite the administrative record. Dkt. # 14, Ex. A. The court's citations use the last three digits (or fewer) of the bates-stamped number at the bottom right corner of each page of the record.

ORDER – 3

Another court in this District has already rejected Union's position. In *Murray v. Anderson Bjornstad Kane Jacobs, Inc.*, No. C10-484RSL, 2011 U.S. Dist. LEXIS 13962, at *11-12 (W.D. Wash. Feb. 10, 2011), the court concluded that the Discretionary Clause Ban applies to any final denial of benefits occurring after the Ban's 2009 effective date.[3] Although the *Murray* court had no occasion to mention when the plan at issue took effect, it undoubtedly took effect before September 2009, because the plan's initial denial of benefits to the plaintiff was in January 2009. *Id.* at *11. The *Murray* court was not concerned with when the plan took effect, but rather the state of the law at the time of the "legally operative denial" of benefits. *Id.* at *10. The defendants in *Murray* issued their final denial of benefits in January 2010. *Id.* at *11. At that time, the Discretionary Clause Ban was in place, and it declared that "[n]o disability insurance policy may contain a discretionary clause." WAC § 284-96-012(1). The Ban itself does not specify what effect it has on discretionary clauses that predate its existence. But RCW 48.18.510 declares that any "otherwise valid" insurance policy that contains a "provision not in compliance with the requirements of this [Washington insurance] code," is not invalid, but rather "shall be construed and applied in accordance with such conditions and provisions as would have applied" if the policy were in compliance with the law. That law mandates that the court construe the Plan as if it contained no unlawful discretionary clause. Each of Union's decisions to deny benefits to Ms. Treves, including the final denial, occurred after the effective date of the Discretionary Clause Ban.

*Murray* does not bind this court, but the court finds its reasoning persuasive.

Union attempts to avoid *Murray* by pointing to *Tebb v. Cont'l Casualty Co.*, 430 P.2d 597 (Wash. 1967). In *Tebb*, the court considered whether an insurance statute enacted in 1951 (*id.* at 598) had any impact on a policy first issued in 1942 (*id.* at 597). Ultimately, the court ruled that the policy had been renewed each year since 1942, and

---

[3] No party argues that ERISA preempts the application of the Discretionary Clause Ban to the Plan. The *Murray* court rejected the insurer's preemption argument. *Murray*, 2011 U.S. Dist. Lexis 13962, at *3-8 (relying on *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009)).

ORDER – 4

thus had issued anew numerous times since 1951. *Id.* at 599. It mentioned in dicta that if the policy had been continuously in effect since before the effective date of the statute, the statute would not apply. *Id.* at 598. But the *Tebb* court had no occasion to consider the applicability of RCW 48.18.510, because that statute by its terms applies only to policies issued after it became effective in 1947. RCW 48.18.510 (applying to "[a]ny insurance policy, rider, or endorsement hereafter issued . . .").

Union also seeks refuge in *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008). In *Saffon*, the court considered the impact of an order of California's Insurance Commissioner revoking all disability insurance policies in the state. *Id.* at 867 & n.1. But the California law that permits the Insurance Commissioner to revoke policies expressly provides that the revocation is "prospective[] and not retroactive[]." Cal. Ins. Code. § 10291.5(f) ("[W]ithdrawal [of the Insurance Commissioner's approval of a policy] shall, in the absence of any such request [for a hearing], be effective, prospectively and not retroactively, on the 91st day following the mailing or delivery of the withdrawal . . . ."). The *Saffon* court relied solely on this feature of California law when it declared that "California law doesn't authorize the Commissioner to [nullify an ERISA plan's grant of discretionary authority] retroactively." 522 F.3d at 867 (citing Cal. Ins. Code. § 10291.5(f)).

Finally, the court observes that although the parties have offered little argument regarding the proper interpretation of the Discretionary Clause Ban, there is evidence that the Insurance Commissioner intended it to apply to policies that predate it. When it proposed the Ban on March 10, 2009, the Commissioner declared that "[c]arriers will not be able to rely on a discretionary clause to deny benefits or protections and need to file new contracts or amendments to change contract or policy language containing discretionary clauses" and that "if current contracts or policies contain discretionary clauses, [insurers] are required to administer them as though they did not contain discretionary clauses." Wash. St. Reg. 09-07-030. That interpretative language does not

ORDER – 5

appear in the Commissioner's notice of the final version of the Ban, *see* Wash. St. Reg. 09-16-128 (Aug. 5, 2009), but the language of the Ban did not change during the rulemaking process. Because the court concludes that the plain meaning of WAC § 284-96-012(1) coupled with RCW 48.18.510 mandates the result it reaches today, the court need not decide whether to afford deference to the Insurance Commissioner's interpretation of the Discretionary Clause Ban.

**B.  Union is Not Entitled to Summary Judgment That it Properly Denied Benefits to Ms. Treves.**

Union insists that even if the court reviews its denial of benefits to Ms. Treves de novo, it is entitled to summary judgment. The court disagrees. Ms. Treves has offered ample evidence that she was disabled within the meaning of the Plan. One of her treating physicians, Dr. William Berg, declared that she was unable to work beginning no later than April 2010 because of the increase in the frequency and severity of her headaches after the sinus surgery. AR 752. After her surgeon referred her to a pain management specialist, the specialist declared that Ms. Treves was unable to do her job, and that her headaches had gone from "episodic" to "chronic" in the wake of the surgery. AR 312. A few months later, the specialist specifically explained how the headaches prevented Ms. Treves from performing the duties of her job. AR 299. Ms. Treves consistently reported debilitating pain to Dr. Berg, the pain management specialist, her surgeon, and a chiropractor who she saw in the months following the surgery. Several of Ms. Treves's co-workers state that since the surgery, she lacks the mental acuity to perform her job. This evidence does not persuade Union; it contends that Ms. Treves is a malingerer. It hired a physician to review her records, and he concluded that she was not disabled. It also hired an investigator to follow Ms. Treves for three days in May 2011, whereupon he discovered that she was ambulatory and capable of shopping. What bearing that has on Ms. Treves's capacity to perform her job is not at all clear to the court. Nonetheless, Union insists that the court can adopt its view of the evidence.

ORDER – 6

Union filed a summary judgment motion; that choice obligates the court to view all evidence and inferences arising from that evidence in the light most favorable to Ms. Treves. *See*, *e.g.*, *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998). The court cannot make determinations about any person's credibility on summary judgment. *See*, *e.g.*, *Deppe v. United Airlines*, 217 F.3d 1262, 1266 (9th Cir. 2000). Union nonetheless invites the court to view the evidence as it prefers, and to adopt its view that Ms. Treves is not to be believed. The court declines the invitation.

**C.     The Parties Must Meet and Confer and Submit a Statement as to a Procedure for Resolving This Case.**

The parties must now meet and confer to propose a means to resolve this case. Ms. Treves has already tipped her hand; she prefers a trial on the administrative record. Pltf.'s Reply (Dkt. # 22) at 3. Many courts have used that approach. *E.g.*, *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (reviewing findings and conclusions after bench trial on administrative record); *Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311, 1313-14 (D. Or. 2012) (declining to enter summary judgment after de novo review, conducting bench trial on administrative record). If the parties agree, the court can conduct a trial based solely on the record and the briefs the parties have already submitted.

If Union or Ms. Treves prefer an in-court bench trial, they must detail what procedures they prefer and why they are necessary. If proceedings other than a bench trial are necessary, the parties shall explain them in detail. In particular, the parties shall consider how the court should dispose of Ms. Treves's claim for breach of fiduciary duty. The parties shall submit a joint statement detailing their positions no later than February 14, 2014.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Ms. Treves's motion for partial summary judgment (Dkt. # 17), holding as a matter of law that the court must conduct de

ORDER – 7

novo review of Defendants' decision to deny her claim for long-term disability benefits. The court DENIES Defendants' motion (Dkt. # 14) for summary judgment. The parties' joint statement in accordance with this order is due no later than February 14, 2014.

Dated this 29th day of January, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8